UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------x
ANTHONY PERRI,

                    Plaintiff,

          -against-

JOHN DOE, Captain;  SERGEANT
BARRITEAU; SUSAN SAVIANO;
JOSEPH DITUCCI;
and THE CITY OF NEW YORK,

                    Defendants.
-------------------------------------------------x
BLOOM, United States Magistrate Judge:

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   FEB ? 8 ???

P.M.
TIME A.M.

**REPORT & RECOMMENDATION**
**06 CV 403 (CBA)(LB)**

Plaintiff, Anthony Perri, brings this *pro se* action pursuant to 42 U.S.C. § 1983 ("§ 1983"), alleging that defendant police officers and the City of New York violated his rights under federal and state law by using excessive force during his arrest and detention, by exhibiting deliberate indifference to his medical needs, and by intentionally inflicting emotional distress upon him.[1]  Plaintiff and defendants have cross moved for summary judgment pursuant to Fed. R. Civ. P. 56. See documents 142, 145. Plaintiff also moves for the "withdrawal of defendants' motion for summary judgment." See document 137. The Honorable Carol B. Amon referred the parties' motions to me for a Report and Recommendation in accordance with 28 U.S.C. § 626(b).  It is respectfully recommended that the parties' motions should be denied without prejudice for the following reasons.

---

[1] Plaintiff alleges, among other things, that during the detention following his arrest on October 11, 2003, defendants from the 109th Precinct purposefully dropped him face down on the ground to determine if he was "faking" a panic attack.

Plaintiff describes himself as a 44-year-old disabled veteran who has suffered from mental illness since childhood. (Plaintiff's Third Amended Complaint ("3d Am. Compl."), ¶13a; Transcript of Plaintiff's Deposition ("Tr."), 32:9-14, attached to the Declaration of Johana Castro ("Castro Decl.") as Exhibit M.)   His diagnoses include post-traumatic stress disorder, panic disorder, anxiety disorder, bipolar disorder, attention deficit hyperactivity disorder, and he suffers from paranoid ideation. (Psychiatric Evaluation Report ("Psych Eval"), 3-4, attached to plaintiff's complaint in <u>Perri v. City of New York, et al.</u>, 08-cv-451 (E.D.N.Y.).)[2]   At age ten, plaintiff was institutionalized after his mother abandoned the family and took one of his brothers with her. (<u>Id.</u> at 2-3.)  He remained in the care of his father with another brother until his father was institutionalized for severe depression and plaintiff and his brother were placed in foster care. (<u>Id.</u>)  Plaintiff has spent many of his adult years incarcerated by the New York State Department of Corrections where his mental illness, coupled with solitary confinement, led to a myriad of violent acts that endangered both himself and other inmates. (<u>Id.</u>; Tr. 32:19 – 33:22.) His struggle with mental illness continued after his release from prison in 1996, as he fought to maintain a regular regimen of medication and to hold a steady job. (Tr. 35:16-25.)  Although he was married several years ago, he was unable to maintain the relationship for more than two months. (Psych Eval at 3.)  His father died of Multiple Sclerosis in 1986, his brother died of AIDS in 1992, and his other brother died from a gunshot wound to the head in 1996. (<u>Id.</u>)

Plaintiff filed the instant case on January 25, 2006, alleging that following his arrest on October 11, 2003, defendants violated his rights under federal and state law by using excessive force during his detention, by being deliberately indifferent to his medical needs, and by

---

[2] The Court takes notice that in addition to the instant case, plaintiff has commenced three other actions in this Court: <u>Perri v. Cardozo, et al.</u>, 06-cv-2846 (ARR)(LB)(dismissed as frivolous on September 25, 2006); <u>Perri v. The U.S. District Court for the Eastern District of New York et al.</u>, 07-cv-282 (ARR)(JMA)(dismissed on January 30, 2007); <u>Perri v. City of New York et al.</u>, 08-cv-451 (ARR)(LB)(dismissed without prejudice on November 17, 2009).

intentionally inflicting emotional distress upon him. On November 20, 2008, defendants filed a motion for summary judgment regarding all of plaintiff's claims.[3] (Document 45.)

While a Report and Recommendation ("R&R") was being prepared,[4] the Second Circuit issued a Summary Order in a separate action brought by plaintiff in this Court, Perri v. City of New York et al., docket number 08-cv-451 ("Perri II"). This Summary Order vacated the Court's February 19, 2008 Order, which dismissed plaintiff's complaint in Perri II as frivolous. See documents 4,6 in docket 08-cv-451. The Circuit held that before the Court reached the merits of plaintiff's claim, the Court should have considered appointment of a guardian *ad litem*, pursuant to Fed. R. Civ. P. 17(c), in light of the mental health evaluation attached to the complaint[5] detailing plaintiff's long history of mental illness. See Perri v. City of New York, No. 08-1058-cv, 2009 U.S. App. LEXIS 22145 (2d Cir. Oct. 8, 2009)(Summary Order)(citing Ferrelli v. River Manor Health Care Ctr., 323 F.3d 196, 201 (2d Cir. 2003)).

On remand in Perri II, the Court considered the application of Fed. R. Civ. P. 17(c) and dismissed the complaint without prejudice, holding that the Court need not appoint plaintiff a guardian in that case, because the "appointment of a guardian *ad litem* . . . would do nothing to advance plaintiff's interests because it appears that no guardian *ad litem* could save plaintiff's claims from dismissal." Perri v. City of New York, et al., No. 08 CV 0451, 2009 U.S. Dist.

---

[3] Defendants move against the remaining claims in plaintiff's third amended complaint. (Document 65; see also documents 95, 97.)

[4] The draft report recommended that plaintiff's motions should be denied, and that defendants' motion for summary judgment should be granted as to all claims, other than plaintiff's claim of excessive force. Plaintiff's two motions (documents 142, 147) were construed as his opposition to defendants' motion for summary judgment.

[5] In Perri II, plaintiff attached a July 31, 2007 psychiatric evaluation conducted by Dr. Mark Wallace to his complaint. The evaluation, requested by Adult Protective Services, details plaintiff's mental illness and personal history, and recommends the appointment of a guardian *ad litem* for the state housing court eviction proceeding then in progress, as well as a guardian under New York Mental Hygiene Law § 81 ("Article 81"). However, from the instant record, any guardian appointed only represented plaintiff in the housing court proceeding which has ended. Apparently, no general guardianship proceeding under Article 81 was ever instituted.

LEXIS 107164, *5 (E.D.N.Y. Nov. 13, 2009).  The decision also noted that a guardian *ad litem* had been appointed for plaintiff in the instant case, id. at *4, n.1, and that any guardian in this case "will nonetheless be free to revisit the pleading and pursue any claim or claims considered viable [in Perri II]," id. at *8.

Indeed, this Court, at the urging of both plaintiff and defendant, see documents 76, 85, 89, appointed a guardian *ad litem* on January 15, 2008, (document 106).  However, finding a volunteer to accept this appointment was difficult to accomplish and the appointment did not last.  Federal courts lack the statutory framework provided under state law to appoint guardians to incapacitated persons.[6]   Federal courts also lack the funds to compensate guardians to indigent persons.[7]  Although some courts have shifted the costs of a guardian *ad litem* to the defendants, see, e.g., Neilson v. Colgate-Palmolive Co., No. 94 Civ. 7643, 1997 U.S. Dist. LEXIS 12202, *2 (S.D.N.Y. Aug. 15, 1997), the Court did not find that appropriate here.  This Court therefore relied on a volunteer attorney from a large law firm to serve as plaintiff's  pro bono guardian *ad litem*.[8]

Plaintiff's pro bono guardian *ad litem* appeared with plaintiff at two settlement conferences before the Court on January 22, and March 12, 2008. (Documents 109, 113.)  On the day before the second settlement conference, plaintiff fired his pro bono counsel and then failed

---

[6] New York State law provides for appointments of general guardians under New York Mental Hygiene Law § 81, Article 17-A of the Surrogate's Court Procedure Act, and NY CPLR §1202. These laws and procedures can be employed through Fed. R. Civ. P. 17(b); however, the federal system lacks the panoply of government agencies and non-profit groups involved in appointments of guardians that exist in state court.  See e.g., New York State Office of Court Administration, Guardian Assistance Network, Resource list, http://www.courts.state.ny.us/ip/gan/resources/directory4guardians.shtml.

[7] According to the New York State Office of Court Administration, state courts maintain a list of qualified individuals willing to serve as guardians.  Informally, if a guardian on the list is appointed to represent an indigent person, every effort is made so that any subsequent appointment referred to that same guardian is made to an individual with funds to compensate the guardian.  See also NY CPLR §1204 ("Compensation of guardian ad litem").

[8] The Court was also able to enlist the services of separate pro bono counsel for plaintiff whom plaintiff had worked with before and had trusted.

to appear at the conference the following day.[9] (See document 114.)  The guardian *ad litem* also appeared with plaintiff at his deposition on May 22, 2008, but plaintiff accused her of poisoning him during the proceeding.

The Court's appointment here of the guardian *ad litem*, largely at the request of the parties, was made in hope of finding a consent resolution to the case.  The Court, however, never held a formal hearing, nor ordered plaintiff to undergo a psychiatric examination to determine his capacity to sue as is generally required in such appointments.  See Neilson v. Colgate-Palmolive Co., 199 F.3d 642 (2d Cir. 1999)(discussing the process litigants are due prior to the appointment of a guardian *ad litem*); see also Mandeville v. Wertheimer, No. 01 Civ. 4469, 2002 U.S. Dist. LEXIS 4628 (S.D.N.Y. Mar. 19, 2002)("When considering the appointment of a guardian ad litem, the Court while 'seeking to protect a litigant's interests,' must also 'be mindful of its obligation to avoid any potential waste of judicial resources through the unnecessary appointment of a guardian ad litem.")(citations omitted).

Therefore, without a formal hearing or a psychiatric examination to determine plaintiff's capacity to sue, when it became clear during Court conferences that plaintiff was unwilling to settle his case on any terms, the Court relieved plaintiff's pro bono guardian.  The pro bono guardian *ad litem* could not make decisions on plaintiff's behalf, decisions which may have been contrary to plaintiff's expressed will, without a more formal hearing that comported with due process.  See Neilson, 199 F.3d at 651 ("Because a litigant possesses liberty interests in avoiding the stigma of being found incompetent . . . and in retaining personal control over the litigation,

---

[9] A third settlement conference was held on April 10, 2008, but the parties were unable to reach a resolution. (See document 117.)

the Due Process Clause of the Fifth Amendment limits the district court's discretion with respect to the procedures used before appointing a guardian ad litem.")(collecting cases).[10]

In light of the Second Circuit's decision in Perri II, holding that the Court "was presented with the sort of evidence" that requires consideration of Rule 17(c), Perri, 2009 U.S. App. LEXIS 22145 at *4, the Court now finds itself in limbo.  Whereas, the Court in Perri II chose not to appoint plaintiff a guardian *ad litem* because it could not "discern in the complaint the germ of a non-frivolous claim," Perri, 2009 U.S. Dist. LEXIS 107164 at *8, the instant case does contain a non-frivolous claim.  That portion of plaintiff's complaint alleging excessive force could survive summary judgment.  Given the Second Circuit's holding, however, the Court cannot reach the merits of any of plaintiff's claims until it first properly determines plaintiff's capacity to sue and, if necessary, appoints a guardian for plaintiff.  I therefore respectfully recommend that the Court should deny the parties' instant cross motions for summary judgment without prejudice.

## FURTHER PROCEEDINGS

If this Report is adopted, the Court shall order plaintiff to undergo a psychiatric evaluation with a selected doctor at a date and time to be determined.  If plaintiff fails to submit to the examination, the Court would have discretion to dismiss his complaint without prejudice. Cox v. AMEX, No. 95 Civ. 9717,  2002 U.S. Dist. LEXIS 11093 (S.D.N.Y. June 21, 2002)(collecting cases); Neilson v. Colgate-Palmolive Co., No. 94 Civ. 7643, 1997 U.S. Dist.

---

[10] See also Nielson, 199 F.3d at 658 (Sotomayor, J., dissenting)("I therefore have little difficulty understanding the district court's apparent desire to bring this case to a speedy conclusion that assured Neilson a comfortable settlement. No matter how well intentioned, however, the district court's desire for a quick and a seemingly fair resolution of this litigation could not and does not displace Neilson's fundamental rights under the Constitution. In my view, the district court failed to give Neilson even the most basic notice before appointing a guardian ad litem who then assumed full control over her case.").

LEXIS 12202 (S.D.N.Y. Aug. 15, 1997).   If, after the psychiatric evaluation and hearing by this Court, it is determined that plaintiff lacks the capacity to sue, any guardian *ad litem* appointed by the Court shall have plenary authority to make decisions for plaintiff in this case, even if plaintiff disagrees with the decision.[11]

## CONCLUSION

For the foregoing reasons, it is respectfully recommended that the parties' instant cross motions for summary judgment, (documents 137, 142, 145), should be denied without prejudice.

---

[11] Although NY CPLR §1207 (which is incorporated here by Fed. R. Civ. P. 17(b)) requires settlement to be made by *general* guardians appointed pursuant to Article 81, rather than guardians *ad litem*, the Court is not obligated to apply this rule. See Nielson, 199 F.3d 642 at 656 ("insofar as state law might be read to preclude the federal court from exercising its appointive power under Rule 17(c), it must give way, Rule 17(b) not withstanding.")(quotes and citations omitted).

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital District Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Secretary of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).

LOIS BLOOM
United States Magistrate Judge

Dated: February 5, 2010
     Brooklyn, New York

8