UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
----------------------------X
                            :
ANTHONY PERRI,              :    06-CV-403(CBA)(LB)
                            :
          Plaintiff,        :
                            :    March 29, 2011
     v.                     :
                            :    Brooklyn, New York
MICHAEL BLOOMBERG, et al.,  :
                            :
          Defendants.       :
----------------------------X
```

TRANSCRIPT OF CIVIL CAUSE FOR STATUS CONFERENCE
BEFORE THE HONORABLE LOIS BLOOM
UNITED STATES MAGISTRATE JUDGE

APPEARANCES:

For the Plaintiff:          ANTHONY PERRI, Pro Se
                            IAN F. FELDMAN, ESQ., GAL


For the Defendants:         SUZANNA H. PUBLICKER, ESQ.




Audio Operator:




Court Transcriber:          ARIA TRANSCRIPTIONS
                            c/o Elizabeth Barron
                            102 Sparrow Ridge Road
                            Carmel, NY 10512
                            (215) 767-7700



Proceedings recorded by electronic sound recording,
transcript produced by transcription service

1          THE CLERK:  Civil cause for status

2    conference, Docket Number 06-CV-403, Perri v. Doe, et

3    al.

4          Will the parties please state your names for

5    the record.

6          MR. FELDMAN:  My name is Ian Feldman.  I'm

7    the court-appointed Guardian ad Litem for Mr. Perri.

8          THE COURT:  Mr. Perri, I know that you're

9    going to want to speak on the record, sir, so why don't

10   you note your own appearance here.

11         MR. PERRY:  Anthony Perri, pro se.

12         THE COURT:  thank you.

13         MS. PUBLICKER:  Suzanna Publicker,

14   Corporation Counsel.

15         MS. SMITH-WILLIAMS:  (Ui) Smith-Williams,

16   Corporation Counsel.

17         THE CLERK:  The Honorable Lois Bloom

18   presiding.

19         THE COURT: Good afternoon, Mr. Feldman,

20   Mr. Perri, Ms. Publicker, and Ms. Smith-Williams.

21         This is a status conference in plaintiff's

22   civil action brought under Section 1983 regarding

23   events that happened on October 11, 2003 at the 109

24   Precinct.  The Court scheduled today's conference, as

25   the parties wrote to the Court that they had reached a

1  settlement, and then wrote to the Court requesting a

2  conference.

3          By way of background, the Court notes that

4  there was a hearing held on December 16, 2010 to

5  determine whether plaintiff should be appointed a

6  guardian ad litem pursuant to Federal Rule 17C.

7          Based on the psychiatric evaluation

8  performed by Dr. Rotter, plaintiff's numerous

9  submissions over the years, and Mr. Perri's testimony

10  at that hearing, the Court found that plaintiff lacked

11  the capacity to pursue this lawsuit on his own behalf

12  and appointed Mr. Feldman as his pro bono guardian ad

13  litem.

14          On January 28, 2011, Mr. Feldman reported

15  that plaintiffs had rejected defendants' settlement

16  offer and informed the Court that he would continue

17  working to reach a settlement that plaintiff would be

18  content with.

19          On March 14, 2011, Mr. Feldman submitted

20  another status report to the Court, in which he stated

21  that a settlement had been reached by the parties and

22  that a stipulation would be forwarded to the Court

23  within five days.

24          Now, it's quite clear to me, Mr. Perri, that

25  you are not happy with this settlement, as you dropped

1   off a courtesy copy of what you filed in the Second

2   Circuit, which is seeking to enjoin the Court from

3   settling or closing this action, seeking to restrain

4   Judge Amon and myself from taking any further action in

5   the case, removing Judge Amon and me from this case,

6   and removing Judge Amon and me from the bench, and

7   appointing a new guardian ad litem in the case to

8   represent your interests.

9           You state in that motion that you've made to

10  the Second Circuit that Mr. Feldman told you that the

11  case would be settled for $12,500 and that the money

12  would be sent to the victims of any crimes that you

13  committed in the past.

14          Again, I convened this hearing today because

15  the defendants requested that the Court schedule a

16  conference regarding the proposed settlement of this

17  action, and I believed it was in everybody's best

18  interest to come before the Court today.

19          When the Court appointed Mr. Feldman as the

20  guardian ad litem for plaintiff, I did explain at that

21  time that the guardian ad litem would make decisions

22  for you, Mr. Perri, based on his perception of what

23  your best interests were, regardless of whether you

24  agreed with those decisions.  And the Court also

25  stressed that this case is limited to the events that

1   allegedly occurred on October 13, 2003 at the

2   109 Precinct, and that Mr. Feldman would only address

3   those claims and would not pursue any of your other

4   claims or cases in this or any other courts.

5          I rely on the Second Circuit's decision in

6   Nielsen v. Colgate Palmolive Co., 199 F.3d 642 (2d Cir.

7   1999), that a guardian ad litem appointed by the Court

8   under Rule 17C to represent an incompetent plaintiff

9   has the authority to settle an action even over the

10  objection of the plaintiff.

11         My job is that after appointing a guardian,

12  I must maintain a continuing obligation to supervise

13  the guardian ad litem's work.  And through the guardian

14  ad litem, the Court itself assumes ultimate

15  responsibility for determinations made on behalf of the

16  ward, and all of this is in the Nielsen case.

17         I think it's fair to say, Mr. Perri, that

18  other than you and me, nobody else has the familiarity

19  with the parties and the proceedings.  We are currently

20  at docket entry 215 in this case.  But, again,

21  throughout the time that you've been before the Court

22  or back and forth between this court and the Second

23  Circuit on this or other claims, the Court has

24  recognized that you have the view that this case is all

25  important in all the other events that are going on in

1    your life, sir.  In fact, in the newest submission to

2    the Second Circuit, I note that you attach the

3    headlines regarding the earthquake and tsunami in

4    Japan, the earthquake in Christ Church, New Zealand, as

5    if all of these are related to the case before the

6    Court.

7              MR. PERRI:  You forgot the (ui).

8              THE COURT:  Yes.  There were many other

9    things that you attached, headlines.  I'm just letting

10   you know that I did review those papers.

11             Now, where a case involves an incompetent

12   person, before we able to approve a settlement, the

13   local rules require that the district court review any

14   proposed settlement and determine whether it is fair,

15   whether it is in the interests of the plaintiff and

16   whether, by comparing the terms of the compromise with

17   the likely rewards of the litigation, that this is an

18   adequate settlement of the case.

19             And so I believe that we could have that

20   fairness hearing today, since both sides have said that

21   the case is settled, but I will need to ask certain

22   questions regarding the substantive and procedural

23   fairness of this settlement, what was done in order to

24   settle this case to insure that there was an arms-

25   length negotiation here.  I would also like the parties

1   to address the substantial, what I see as obstacles for

2   plaintiff should he proceed further in the case.

3          Which, Mr. Perri, I frankly don't think

4   you're aware of what difficulties those would be.

5          MR. PERRI:  I am aware.  When you're done,

6   I'll address that with you.

7          THE COURT:  If you'd like to tell me now --

8          MR. PERRI:  Yeah.  Your Honor, I believe,

9   first off, that the events --

10         THE COURT:  Mr. Perri, I think that the mic.

11  is blocked by whatever is there.  Can you make sure

12  there is a green light on.

13         MR. PERRI:  Okay.

14         THE COURT:  Okay, thank you.

15         MR. PERRI:  Your Honor, if it pleases the

16  Court, I believe that, first off, the events of October

17  11, 2003 are a conspiracy.

18         THE COURT:  October 13, 2003.

19         MR. PERRI:  See, you know better than me.

20         THE COURT:  No, it's okay, sir.  I have my

21  notes in front of me.

22         MR. PERRI:  Yeah.  And even if we take that

23  one incident, the Court record relays the fact that

24  over five years since I filed this case in this

25  district, I've been homeless three times.  I've been

1  incarcerated twice because of being setup by members of

2  the New York City Police Department and the FBI.  And

3  it holds a record of evidence -- even if I never got

4  anything, I believe, and even if something does happen

5  to me, which you know I have numerous medical ailments

6  right now.  Let the record reflect that I'm carrying my

7  food around for fear of it being tampered with in my

8  own home.  And I have blood coming out of my ears, out

9  of my nose.  I have severe problems with my legs and my

10 back.

11         And this is the only case I have active.  If

12 this case ends, they're making a blanket statement that

13 I'm delusional, that none of this is taking place.

14 Judge Ross, Judge Amon, and yourself, and all the

15 motions I've brought.  If this case ends, I have no

16 protection whatsoever, no litigation going whatsoever.

17         The City is aware of my situation.  I was

18 offered the exact same amount of money by Mary O'Flynn

19 approximately two years ago, $12,500, and I refused it.

20 It's nowhere near -- the City settles all the time for

21 false arrests for all different kinds of money.  And

22 the City is aware of the problems I've had with the New

23 York City Police Department.  And for them to come

24 forth with this offer right now or this settlement --

25 and, furthermore, I've stated to Mr. Feldman, whose

1    agency has numerous resources to represent plaintiffs

2    first amendment rights, numerous times I've stated to

3    him that I'm having these problems, and his agency --

4    and I have a letter before his director asking that my

5    first amendment rights be represented, and I've tried

6    to get numerous attorney.  And I believe that the

7    influence of the Court and the federal government and

8    the City has stopped really anybody from helping me.

9            And I believe also that one day that the

10   truth of this will come out because there are things

11   happening and there are a lot of law enforcement

12   officers on high levels involved and a lot of city and

13   federal officials involved in this case now, and

14   they've committed themselves, and people have been

15   harmed.  And I believe that down the road that to

16   elevate judges or to appoint government officials to

17   cover this up is not going to work, and that down the

18   road -- and I say that with respect, your Honor.  And I

19   believe that down the road that to have this case going

20   will help me, will benefit me.  That amount of money is

21   not going to help me.  It's going to stop my SSI money.

22   I'm not going to get the money anyway.

23           THE COURT:  Well, those are things that I

24   want to inquire into, Mr. Perri.  But from what I'm

25   hearing from you, it's not necessarily the amount of

1  money, although that's an aside, it's that you believe

2  if the case is resolved, that you no longer have a case

3  pending, and that somehow that means that you would be

4  in harms way more than you are saying you are in harms

5  way now?

6        MR. PERRI:  Yeah.  As I always said back in

7  2008 to your Honor, I said if they provide adequate

8  money where I can provide safety and security for

9  myself in my own home, where I don't have to rely on --

10  and this overlaps to the federal government and the

11  court where they could have -- you know, they have

12  millions of homes in foreclosure.  They could have

13  provided me a safe home to live in and alleviated this

14  situation.

15        THE COURT:  Mr. Perri, there are a lot of

16  big problems in the world.  I agree with you on that

17  and I understand --

18        MR. PERRI:  That we're all involved in this.

19

20        THE COURT:  I understand that you have

21  significant reservations regarding settlement.  I did

22  want you to be able to speak on the record as to what

23  your position is.  I understand that you have the right

24  to object to the settlement; you are going to appeal

25  it.  I believe whether or not it was more than the

1   amount, I believe that you have not really addressed,

2   comparing the terms of this compromise with the likely

3   rewards of the litigation, or the substantial obstacles

4   that you would face should the case proceed; but, we

5   can come back to those issues.

6          I would like Mr. Feldman to at least set

7   forth on the record what did you do in order to resolve

8   this case with defendants.  Can you speak in an

9   abbreviated way, as to what these claims are about in a

10  nutshell, and what you see as the merits to a

11  settlement at this point?

12         MR. FELDMAN:  Sure, your Honor.  Well, first

13  of all, I've read almost all of the documents that were

14  in the file, which as you said is -- well, now it's up

15  to -- I think the docket sheet on PACER is up to 28 or

16  29 pages, and I've read -- I didn't read every

17  document, but some, from the outline of PACER, I didn't

18  have to read, but I read just about everything else

19  that was important here.

20         The issues that happened around October 11,

21  2003 seem to be subsumed to everything else that is

22  going on in Mr. Perri's life.  The event of October 11

23  was the culmination of the conspiracies in the world,

24  conspiracies against Mr. Perri, and then continued

25  beyond October 11.  So I don't believe that any amount

1   of money will -- perhaps a million dollars or half a

2   million dollars would satisfy Mr. Perri, but I'm not

3   even sure about that, since the main focus is getting

4   the people to stop poisoning his food, to stop

5   poisoning his cat, to stop spying on him, and all of

6   the other -- the federal, the city, and the state

7   governments have been doing against him and violating

8   his due process rights, in his words, and his first

9   amendment rights.

10              Now, it could be that Mr. -- I truly believe

11  that Mr. Perri believes this and that it could be that

12  I just don't see the forest because of the trees and

13  Mr. Perri sees the forest because of the trees, and I'm

14  just not at that point.

15              THE COURT:  Mr. Feldman, before you go on,

16  can you state for the record what your position at the

17  Urban Justice Center is, please, sir.

18              MR. FELDMAN:  I'm the Director of Legal

19  Services for the Mental Health Project.

20              THE COURT:  And how long have you been at

21  the Urban Justice Center, sir?

22              MR. FELDMAN:  It will be four years this

23  June, but before that I spent 35 years at the Legal Aid

24  Society dealing with many people who have mental

25  illness.

1          THE COURT:  And in terms of assessing the

2    value of the case, you have reviewed some of the

3    records regarding what happened on October 13.  I know

4    we're all saying October 11, but according to the

5    complaint it's October 13, 2003 at the 109 Precinct.

6          MR. FELDMAN:  I did, Judge.

7          THE COURT:  And you understand what Mr.

8    Perri is claiming happened on that one night?

9          MR. FELDMAN:  I do.

10         THE COURT:  And, again, in looking at the

11   rest of what Mr. Perri believes has happened since that

12   date, I understand what you're saying: He is earnest.

13   Mr. Perri believes that all of this has generated a

14   great conspiracy between federal, state, and city

15   officials of people following him.  He's been filing

16   what he calls "Perri Reports" for years, where he's

17   taking pictures of people that he believes have been

18   following him.  And in my mind, Mr. Feldman, anyone who

19   tries to help in this case will at some point become

20   part of the conspiracy, which is why I believe Mr.

21   Perri is now asking for Judge Amon, myself, to be

22   removed from the bench or to be removed from this case.

23         Again, I hope that that doesn't continue

24   with your volunteer services to the Court as his

25   guardian ad litem, but I do want to address what he

1    alleged happened to him on that occasion, not since

2    that time.  Can you put in a nutshell what he is

3    alleging happened to him and why you believe that --

4    and then you can say what the terms of the settlement

5    are?  I do want you to specifically address what Mr.

6    Perri says in his papers to the circuit that I just

7    wanted the case settled, that I -- the other piece

8    being that the money will all be taken away by the

9    victims.

10             MR. FELDMAN:  Of all the documents in this

11   case, I think there are three or four that drove me to

12   believe that the settlement offer was reasonable: One

13   was Mr. Perri's third amended or fourth amended

14   complaint; there was his deposition of about 160, 170

15   pages; there was also the police report; and there was

16   the report from the Flushing Hospital.

17             On October 11, Mr. Perri was arrested by the

18   police because he -- so the police report alleges that

19   he grabbed the arm of an 11-year-old child who he felt

20   was throwing eggs at someone who he shouldn't have been

21   throwing eggs at this particular person.  He was taken

22   to the police station.  He didn't like the way he was

23   treated at the police station.  He developed

24   palpitations and the police took him to the hospital,

25   Flushing Hospital, where he was really diagnosed as a

1    panic attack, and then he was brought back to the

2    police station.  He felt that he was still not feeling

3    well.  Again, the emergency FDNY came.  He wasn't taken

4    back to Flushing Hospital.  And eventually he was taken

5    to court and that court proceeding was actually

6    eventually discontinued.

7              Based on Mr. Perri's deposition and my

8    conversations with Mr. Perri, there is no physical

9    injury.  I think one of the keys to it was when he was

10   asked at the deposition was after October 11, 2003 when

11   is the last time that you saw a doctor, and he said it

12   was six months later.  And was it anything to do with

13   what happened to you on October 11, 2003, and he said

14   no.

15             I don't do these, what we call, I guess

16   police misconduct cases, but I did consult with a

17   lawyer who does these cases.  He told me he's been

18   doing this for about forty years.  I explained to him

19   the facts of Mr. Perri's case, of course, keeping Mr.

20   Perri's confidentiality.  And he said that the case is

21   worth about 10 to $15,000, and that was the bulk of his

22   practice doing these kinds of cases.  And based upon

23   what I told him, he said that it was reasonable offer

24   by the City.

25             I also consulted a psychiatrist that the

1    Urban Justice Center has as an advisor, who has

2    actually done trainings for us about Mr. Perri's

3    situation in an effort to try to deal with some of the

4    issues that Mr. Perri has and also to make sure that I

5    was doing the right thing in my dealings with

6    Mr. Perri.  And the response of the psychiatrist was

7    that I was right on point, however I was handling the

8    situation.

9            THE COURT:  And can you speak to that

10   because Mr. Perri, although it wasn't clear in his

11   papers, said that he didn't hear from you for a month

12   and then you told him that the case was being settled.

13           MR. FELDMAN:  Well, I spent a lot of time

14   reading the papers, 28 pages of docket entries, as I

15   said before.

16           When I told Mr. Perri the case was being

17   settled, it was really just to inform him that this was

18   a settlement proposal, that there was nothing in

19   writing about it.  In fact, there is no stipulation,

20   which --

21           THE COURT:  And what --

22           MR. FELDMAN:  The stipulation, actually,

23   we'll get to that a little bit later, Judge, but that's

24   going to present a problem here.

25           THE COURT:  Well, I would like to get to

1    that, but what happened between the time that you told

2    Mr. Perri -- that in January you reported that

3    plaintiff had rejected the defendants' settlement

4    offer, and you informed the Court that you would

5    continue working to try to reach a settlement that

6    plaintiff could be content with.  And then it was March

7    14 when there was another letter submitted to the

8    Court.

9            MR. FELDMAN:  I'm a busy legal services

10   attorney, and I have a large -- even though I supervise

11   people, I also have a large personal practice, and I

12   just kept reviewing the records and thinking more about

13   Mr. Perri's situation.

14           THE COURT:  Did you speak to him in those

15   intervening weeks?

16           MR. FELDMAN:  Maybe once or twice.  He knew

17   that I was working on the case.  Plus, he knew that I

18   was always available.  I've always been able -- Mr.

19   Perri has always been able to reach me by telephone,

20   and I've always promptly returned his calls.  And I

21   called him when I found out about the conference.  I

22   called him to inform him, in case he didn't get the

23   mail in time.  And actually this morning I spoke to Mr.

24   Perri, too, to make sure that he remembered about the

25   conference and that I would see him later, and we

1    discussed the case on the telephone, and we discussed

2    the case in the courtroom, also, before your Honor got

3    on the bench.

4              THE COURT:  Mr. Perri, I don't want you to

5    underestimate the difficult position that I put Mr.

6    Feldman in by appointing him as your guardian ad litem.

7    He has ethical obligations because he is an attorney

8    and his efforts to work to reach a resolution that you

9    could be content with, even though, as he said you

10   might not be content unless you got a half a million or

11   a million dollars, which is not going to be a

12   settlement that the City will reach on a one-time event

13   with no follow-up permanent injuries.

14             The clear impression that I get is that you

15   don't want a decision to be made period here, Mr.

16   Perri.

17             MR. PERRI:  Could I just remark on some

18   things he just said which are not really true, but

19   first Mr. Feldman came onto the case --

20             THE COURT:  Again, I can't hear you on the

21   record, so --

22             MR. PERRI:  Mr. Feldman came onto the case,

23   we spoke, he said he would keep an open mind, he'd

24   review the documents.  He made me, basically, the same

25   offer maybe a month or two ago when I last spoke to

1  him.  And I told him that I thought the case was worth

2  more, it's an important case, it's my only case going.

3  I'm really having these problems with the police and

4  then I --

5           THE COURT:  But that's the part that -- I

6  don't want to interrupt you, but that's the part that

7  you're not able to hear from me or from Mr. Feldman.

8  That even though you're having repeated problems in the

9  world, this case is limited to the events that happened

10  on October 13, 2003, which I believe Mr. Feldman left

11  out one salient point of that case, which is that the

12  police officers did not believe you were having a panic

13  attack, and in their wisdom decided to four-point you

14  face down and drop you.  And said if you put your hands

15  out, then you were faking a panic attack, and if they

16  dropped you and you landed on your head, that they

17  would believe it was a panic attack.

18           And on that issue, I basically said, one,

19  that you could not make something like that up; and,

20  two, that that was not a reasonable use of their force

21  or powers at the precinct to drop somebody who was

22  suffering from -- even if it was a maligned panic

23  attack, police officers should not be holding somebody

24  face down and drop them.

25           So that was what I thought was a salient

1  detail in this case, whether or not that force used was

2  an appropriate use of force.  As far as you trying to

3  protect a neighborhood child when the other child was

4  egging them, and that they left the house open, and

5  that your cat was in the house.  All of those details

6  are very important to you, Mr. Perri, but they don't

7  really increase the value of a case that settles.

8          MR. PERRI:  And now another issue -- I thank

9  you for pointing that out, your Honor.  Because it

10  seems like Mr. Feldman, he could argue for my side, but

11  it seems like he just stated like that -- like he's the

12  attorney for the City.  And I say that with respect to

13  Mr. Feldman, but there's also --

14          THE COURT:  Sir --

15          MR. PERRI:  -- intentional infliction --

16          THE COURT:  -- he is not an attorney for the

17  City.

18          MR. PERRI:  I know.

19          THE COURT:  But he is your guardian ad

20  litem.  He is not appointed to be your litigation

21  counsel.

22          MR. PERRI:  Okay.  Okay.  Now, but there's

23  intentional infliction of emotional distress also, your

24  Honor, that they repeatedly mocked me, mimicked me, the

25  whole time over and over.  This bothered me for years.

1          THE COURT:  Mr. Perri --

2          MR. PERRI:  And still bothers me.

3          THE COURT:  Mr. Perri, I don't doubt that

4    there was a lot going on for you, repercussions of

5    prior events.  I mean, quite frankly, sir, when I read

6    some of the papers that you submitted early on in the

7    case about things that had happened in the northern

8    district when you were incarcerated in Clinton and your

9    upbringing, all of these have effects on you, sir.

10          MR. PERRI:  Okay.

11          THE COURT:  I do need to get to what Mr.

12    Feldman was saying about the difficulties in the

13    settlement papers because that's --

14          MR. PERRI:  And there's a denial of medical

15    treatment that if I needed to be -- was having a

16    psychiatric or emotional disturbance, which everybody

17    is saying I'm crazy and I'm incompetent, but if I was

18    really having that, that what I actually got was an

19    attack of a harassment and intentional infliction of

20    emotional distress for the amount of time I was in.

21          THE COURT:  Which I really do believe is why

22    the City is willing to settle this case.

23          MR. PERRI:  Okay.

24          THE COURT:  And even though this number may

25    have been their constant number from when Ms. O'Flynn

1    was on the case, I think that they have always been

2    willing to settle the case because they are recognizing

3    that it, perhaps, could have been handled in a better

4    fashion than it was.

5              MR. PERRI:  Okay.  I appreciate that.

6              THE COURT:  Mr. Feldman, as to the issue --

7    and we'll get back to you, Mr. Perri.  As to the issue

8    of whether or not Mr. Perri would get this money, could

9    you address that issue?

10             MR. FELDMAN:  Of course, your Honor.

11             There are two issues:  One, New York

12   Executive Law Section 632 --

13             THE COURT:  The Son of Sam Law?

14             MR. FELDMAN:  -- hyphen A.  It's not exactly

15   the Son of Sam Law, but everybody calls it the Son of

16   Sam Law.  There's something that Ms. Publicker had

17   pointed out to me, kindly.

18             THE COURT:  Crime Victim Compensation Board.

19             MR. FELDMAN:  Yes.  If the settlement is for

20   $10,000 or more, then the money is -- the City is

21   supposed to notify the Crime Victim Compensation Board

22   and they're supposed to notify any victim --

23             THE COURT:  Any victims.

24             MR. FELDMAN:  -- any victims of Mr. Perri's

25   crimes to see if they want to put in a claim.

1           Now, reading that statute, which is --

2           THE COURT:  Quite a statute.

3           MR. FELDMAN:  -- quite a statute, exactly --

4    I don't believe that that statute covers Mr. Perri

5    because under the definition of someone who's been

6    convicted of a crime -- yes, he has been convicted of a

7    crime, but it's a definition under the statute that

8    doesn't cover Mr. Perri on my reading of the statute.

9           Now, the City takes the position that once

10   they're offering somebody $10,000 or more, that there's

11   no obligation on their part to make a decision or

12   investigation about whether or not that statute applies

13   to the individual.  They give that responsibility to

14   the Crime Victims Board, and they eventually make that

15   determination.

16          THE COURT:  And when you're saying that you

17   don't believe that it covers Mr. Perri, the reason for

18   that is?

19          MR. FELDMAN:  It has to do with the strict

20   definition in the statute because Mr. Perri has not

21   been under any -- he's not incarcerated, he's not -- he

22   hasn't been on parole for many years.  He's not under

23   any parole supervision, and he hasn't been since -- how

24   long have you been off of parole?

25          MR. PERRI:  I've been home 15 years.  I've

 1    been off parole for seven years.

 2              THE COURT:  And when was the statute

 3    enacted, just because that may also -- I do know that

 4    the original Son of Sam Law was struck down and then

 5    they legislated a new version of the act, which, again,

 6    forgive us for calling it "Son of Sam," but that's what

 7    anybody who practices in the area calls it.

 8              MR. FELDMAN:  I see there was an amendment

 9    in 2001.  I'm assuming that applies to the situation

10    before you.

11              THE COURT:  And so you believe that he is

12    not somebody who falls within the ambit of the statute?

13              MR. FELDMAN:  Yes, but it gets even more

14    complicated --

15              THE COURT:  Okay, go ahead.

16              MR. FELDMAN:  -- than the settlement.

17    Because under the stipulation that the City -- the

18    proposed stipulation that the City sent to me, which I

19    assume is standard --

20              THE COURT:  The liens provision, the

21    affidavit of no liens?

22              MR. FELDMAN:  Yes, that's correct.  We're

23    dealing with Medicaid.  We're dealing with Medicare,

24    Worker's Compensation, Public Assistance.  I assume

25    parking tickets or any debt that --

```
 1                THE COURT:  Deadbeat Dad Statute.

 2                MR. FELDMAN:  Yeah, any debts.

 3                THE COURT:  I don't think that we have that

 4    as an issue here.  I do know, Ms. Publicker, because I

 5    have had more than one settlement with the City before,

 6    that there have been times that the City has worked

 7    some magic to intervene.  I don't think you can do

 8    anything about the federal programs.  And so the SSI,

 9    Mr. Feldman, would that be affected?

10                MR. FELDMAN:  No, it's not.  And Mr. Perri

11    doesn't get any -- because he gets only SSI, he doesn't

12    have any Medicare, but he does get Medicaid.

13                THE COURT:  But will he be kicked off of SSI

14    because he's getting a settlement?

15                MR. FELDMAN:  Well, we can work on some sort

16    of supplemental, some sort of spendthrift trust for Mr.

17    Perri, and I know lawyers who will do it pro bono for

18    me.

19                THE COURT:  In other words, Mr. Perri, that

20    he could try to set it up so that your monthly

21    allowance from the federal government wouldn't be

22    disrupted by a settlement, and that you'd have some

23    money for discretionary things that are not now

24    covered.

25                MR. FELDMAN:  What I did learn --
```

```
 1              MR. PERRI:  Yeah.

 2              THE COURT:  Is that a fair appraisal?

 3              MR. FELDMAN:  Yes.

 4              THE COURT:  Go ahead.

 5              MR. FELDMAN:  But I did learn, Judge, that

 6   in 2007 and 2008, New York City Human Resources

 7   Administration gave Mr. Perri a few dollars short of

 8   $7,000.

 9              THE COURT:  For a one-shot-deal on an

10   eviction.

11              MR. FELDMAN:  For a one-shot deal, most of

12   it was for rent.  There was one for utilities.  So

13   if --

14              THE COURT:  Now, again, my experience with

15   the corporation counsel is any amount over $7,500 is

16   subject to the affidavit of no liens.  But I could tell

17   you that I had a specific case earlier this year that

18   was a very difficult settlement to come by, and that in

19   that case where it was a over $10,000 -- over $7,500

20   case, the lien requirement and the City was able to

21   get, and I believe it was -- I won't say it's DHS, but

22   it was able to get the benefit claim not enjoined, but

23   that they said that they would not collect against the

24   settlement to make the settlement go through.

25              MS. PUBLICKER:  Your Honor, I've never
```

```
1   personally had the situation happen.  I mean, we could

2   of course look into it.

3               THE COURT:  I could tell you the name of the

4   case and you could go back.  I mean, it was in your

5   office, and it was to make the case go through.

6               And these are the things that I need the

7   City to do something about because, again, Mr. Perri, I

8   can't avoid everything.  The federal government, we

9   can't avoid any of the -- but Medicare is not at issue

10  here because you're under the age that Medicare would

11  kick in.  On the Medicaid benefits, I don't think if

12  you're not getting treatment for injuries that Medicaid

13  would pay for, that they don't require any sort of lien

14  to be filed.  I know that there was a new law passed

15  about reimbursement out of personal injury rewards when

16  somebody is being treated by doctors that could be

17  covered by Medicaid or Medicare.

18              But, Mr. Perri, frankly, this is going to be

19  more work to get the settlement to go through to set up

20  a trust so that you would get some of these funds.  So,

21  again, --

22              MR. PERRI:  Some of the funds?

23              THE COURT:  What Mr. --

24              MR. PERRI:  I don't know what's going on.

25              THE COURT:  Wait.  Wait.  Wait.  What Mr.
```

```
1   Feldman was saying is in order to not upset your SSI

2   payments, instead of getting one lump sump, he would

3   try to get a trust set up so that --

4                 MR. PERRI:  Oh, I see.

5                 THE COURT:  -- you would be able to get that

6   money without upsetting your Social Security award.

7                 MR. PERRI:  I don't know what a trust is.

8                 THE COURT:  That's --

9                 MR. FELDMAN:  That's correct.

10                THE COURT:  So, again, that would be after a

11  settlement would go through.  It's not going to be part

12  of the settlement.  But, again, Mr. Feldman is saying

13  that he would undertake to find somebody to establish

14  that sort of trust so that your SSI benefits would not

15  be disrupted.  You know that SSI requires you to spend

16  down if you get money --

17                MR. PERRI:  Yeah.

18                THE COURT:  -- over a certain amount of

19  money. Now, again  --

20                MR. PERRI:  That's why it's not really --

21                THE COURT:  Excuse me?

22                MR. PERRI:  That's why it's not really

23  feasible because if I have to give up the SSI --

24                MR. FELDMAN:  No, you wouldn't --

25                MR. PERRI:  It's such an obstacle.
```

```
 1              THE COURT:  Nobody wants you to give up the

 2     SSI, Mr. Perri.

 3              MR. PERRI:  It's such an obstacle to get it

 4     to start with, as you know.

 5              THE COURT:  Mr. Perri, I understand.  That's

 6     why nobody wants you to give up the SSI.  I'd like the

 7     City to work on getting the liens waived, and I do

 8     believe that that is possible, although not easy to

 9     accomplish.  But, again, I know that it's happened in

10     other cases and I can say off the record the name of

11     the case so you can go track back and find out who the

12     supervisor in charge on that case was to try to figure

13     out how that was accomplished.  It was also against the

14     police department.

15              As far as the definition of whether or not

16     Mr. Perri would be part of the Crime Victim

17     Compensation Board, again, I don't think that's part of

18     this settlement at all.  And I, frankly, have never

19     seen that in any of the City's settlement papers.

20              MS. PUBLICKER:  It's not in our settlement

21     papers that we submitted to Mr. Feldman.

22              MR. FELDMAN:  It's not in the settlement

23     papers, but they would be applying the statute.

24              THE COURT:  They would be notifying the

25     Crime Victim Compensation Board in case he was
```

 1   considered to be somebody who had to pay back under the

 2   statute.

 3           MR. FELDMAN:  No.  Apparently, the City

 4   doesn't investigate or doesn't make a decision --

 5           THE COURT:  I think that's true.

 6           MR. FELDMAN:  -- about whether the statute

 7   applies to Mr. Perri.  They just pass it onto the Crime

 8   Victims Compensation Board so --

 9           THE COURT:  The only thing that I'm

10   questioning in this, Ms. Publicker -- and, again, I've

11   had you on other cases, but you've never been in the

12   courtroom, it's been by phone, and I don't know how

13   much experience you've had, and I'm not trying to

14   disrespect you in any way by saying this.  All the

15   cases where there has been a reporting has been when

16   somebody filed the claim because they were at Rikers,

17   not when somebody was a free person in the world filing

18   a claim who had a past history of incarceration years

19   and years ago.

20           So I don't really understand what your

21   saying in terms of that you're required to notify them,

22   that you don't investigate whether or not he's covered

23   by the law; you just notify Crime Victim Compensation

24   Board.  I would understand if this was a claim filed at

25   Rikers or any other City prison and it related in some

1   respect to his incarceration or his conviction on a

2   prior crime.  But you're telling me for every citizen

3   who settles a suit against the City of New York, if you

4   find out that they ever were incarcerated you're

5   sending it off to the Crime Victim Compensation Board?

6                MS. PUBLICKER:  No, your Honor, not for any

7   crime that they've been incarcerated for.  But, in this

8   case, we were aware that Mr. Perri was convicted of

9   attempted murder, a felony that I believe integrated in

10  the statute for which there is a victim that could be

11  compensated.

12                And, as Mr. Feldman stated, we don't

13  investigate.  I have looked at the New York Board of

14  Parole's website, searched for Mr. Perri's name, and it

15  comes up that is parole was revoked, according to the

16  website.  Now, Mr. Feldman has since informed me that

17  that parole is actually discharged.  However, going off

18  of the New York State Department of Parole's own

19  website, he is still under parole for the attempted

20  murder.

21                THE COURT:  Well, again, --

22                MR. FELDMAN:  May I be heard on that?

23                MR. PERRI:  Unbelievable.

24                MR. FELDMAN:  May I be heard on that, your

25  Honor?

1          THE COURT:  Yes, certainly.

2          MR. FELDMAN:  It would appear if one did

3   look at the parole website that Mr. Perri is still

4   under parole.  But if one looks at the DOCS website,

5   the Department of Corrections, Mr. Perri did go back

6   into prison and actually served out his prison term

7   because of the parole violation.

8          THE COURT:  But even more than that, if

9   we're all trusting these websites, which I know that

10  there have been cases about inaccurate warrants that

11  have been acted on, and there have been cases where the

12  courts have said that the person who relied on the

13  warrant would be given qualified immunity.  But this is

14  a different sort of case.

15          In the settlement of the lawsuit, if there's

16  an indication on a different public website that this

17  website is inaccurate and Mr. Feldman is pointing to

18  another website that you can access to say that he

19  fully discharged his term in prison and there was no

20  parole, then he was not subject to parole at the time

21  that this settlement happened.

22          Now, that being said, Mr. Perri, I'm not the

23  expert and I'm not your lawyer on this Son of Sam Law.

24  I do know that it applies to settlements.  Even if your

25  Aunt Betty died and left you money in a will and you

1    were somebody who came under the coverage of this

2    statute, that money that you got from Aunt Betty's will

3    would still be something that would be reported to the

4    Crime Victim Compensation Board.

5            The truth is, not everything that's reported

6    to the Crime Victim Compensation Board then gets taken.

7    It's a process of notification of a victim that they

8    could try to file against that money, that settlement,

9    or Aunt Betty's inheritance.  And sometimes the person

10   does come and file a claim; sometimes that person is no

11   longer where they last were and nobody can be located

12   and there's no claim filed.  I can't really -- I can't

13   excuse you from the law.  Mr. Feldman is saying under

14   his best reading it wouldn't apply to you.  I'm making

15   the argument to the City that if he isn't on parole and

16   you can verify that he has fully served his term, I

17   don't know what your obligations are on notifying the

18   Crime Victim Compensation Board.

19           MS. PUBLICKER:  Your Honor, when we notify

20   the Crime Victims Compensation Board, we merely inform

21   them of the defendant's name.  We don't do any

22   investigation.  They are the ones who, before notifying

23   a victim, determine whether or not the individuals are

24   subject to the law.  Which is why there may be claims

25   that are submitted to them for review that are not

1  applicable.

2          THE COURT:  But that's what I'm saying, Ms.

3  Publicker.  In every case that settles, so every trip

4  and fall on a pothole, you're notifying the Crime

5  Victim Compensation Board if you have a settlement in

6  that case?

7          MS. PUBLICKER:  Your Honor, I know that

8  routinely in our torts division, which typically is in

9  state court, so you know they are not here, they

10  routinely make notifications to the Crime Victim Board

11  where there have been prior instances of criminality.

12  And I think also due to the severity of the crime at

13  issue here, that there does seem to be some obligation

14  to, at least, inform the Board.  Whether or not they

15  actually enforced it or actually attempted to do

16  something with the victim is not something that we

17  really have control over.

18          THE COURT:  Have you discussed this with Mr.

19  Feldman because he, by reading the statute, is coming

20  to a different conclusion about the applicability?

21          MS. PUBLICKER:  Yes, your Honor.  I've

22  actually spoken to the Crime Victims Board and laid out

23  the facts of this case that previous conviction, this

24  lawsuit and --

25          THE COURT:  And you said when the conviction

```
 1   was?

 2              MS. PUBLICKER:  Yes.  And what I had found

 3   on the website.  And the response of the attorney at

 4   the Crime Victims Board was that he believed that this

 5   very well might be a case in which Son of Sam Law

 6   applied, and that to be safe I should contact him when

 7   a settlement had been reached.

 8              THE COURT:  But, again, he wasn't saying for

 9   sure, and you were relying on the website that said he

10   was still under parole?

11              MS. PUBLICKER:  Correct.

12              THE COURT:  And so that was -- if that was

13   correct, that might change the determination.  In other

14   words, Mr. Perri is no longer subject to any sentence

15   that might change.

16              MS. PUBLICKER:  I believe there's a period

17   of time after which the sentence has ended.  I don't

18   know if that period -- I believe it might be three

19   years, but I'm not sure.  So that period does go beyond

20   the release from parole, and I don't know how the

21   ongoing lawsuit might apply if this thing --

22              MR. PERRI:  Can I say something, your Honor?

23              THE COURT:  Yes.

24              MR. PERRI:  You know, with all the resources

25   of the City and their connection to the NYPD and the
```

1   corporation counsel, for them to access a website, and

2   they have the information in my deposition.  They're

3   aware I'm off parole themselves, and to actually rely

4   on something with all the resources that they have that

5   says I'm still on parole and I've been off parole for

6   seven years, and this crime happened 25 years ago, you

7   know --

8           THE COURT:  Well, again, Mr. Perri, all of

9   those facts are in your favor.

10          MR. PERRI:  -- to hold this up -- to hold

11  this up -- to even bring this up with everything that

12  we've been through over the years with the corporation

13  counsel, really shows why we've been through so much

14  that we've been through with the City.

15          THE COURT:  Mr. Perri --

16          MR. PERRI:  And only because --

17          THE COURT:  Mr. Perri, your point is taken,

18  okay.  I note your point.

19          MR. PERRI:  They're getting away with

20  murder, literally.

21          THE COURT:  I note your point.

22          MR. PERRI:  Them and their clients are

23  getting away with murder.

24          THE COURT:  Can we get back to -- under

25  local civil rule 83.2, again, the Court must review any

1   proposed settlement and determine whether it is fair,

2   whether the interests of the plaintiff are protected,

3   and whether by comparing the terms of the compromise

4   with the likely rewards of litigation, this settlement

5   should be approved.  I did ask what you did.  I did

6   hear that you reviewed all the docket entries,. that

7   you have had conversations with Mr. Perri.  I think

8   it's obvious, but you didn't state for the record, that

9   you've had negotiations with the City.

10          Can you state what you've done in terms of

11   trying to negotiate a fair resolution of the case?

12          MR. FELDMAN:  Well, I asked the City, of

13   course, for more money based upon my conversation with

14   this lawyer who has been doing these cases for 25

15   years.  And my description of what happened to Mr.

16   Perri, he said the case was worth about $15,000.  The

17   City has offered us ten, so we settled at twelve-five,

18   $12,500.

19          THE COURT:  And in terms of comparing that

20   with the likely rewards of litigation?

21          MR. FELDMAN:  Mr. Perri would like me and/or

22   the Urban Justice Center to take this case to trial

23   before a jury.  I don't think he realized -- and depose

24   all of the police officers, all of the defendants.  I

25   don't think he realizes how expensive depositions are,

1    that they could run into thousands and thousands of

2    dollars.  His deposition alone probably cost -- that

3    the City asked him to participate in was probably a

4    couple of thousand dollars.

5              There are no private lawyers who would take

6    this case on a contingency fee.  And, in fact, the rule

7    is that if -- should Mr. Perri prevail on a trial of

8    this case and the settlement would be less than

9    $12,500, there would be no attorneys fees available to

10   any private attorney who would take this case.

11             THE COURT:  Is that because there's been an

12   offer of judgment made?

13             MR. FELDMAN:  That's correct.

14             THE COURT:  And this was made by the City,

15   an offer of judgment under Rule 68?

16             MS. SMITH-WILLIAMS:  No, your Honor.  We

17   never made a Rule 68.

18             MR. FELDMAN:  Well, they didn't make a

19   formal one, but that rule was discussed.  I mean --

20             MS. PUBLICKER:  I did discuss if this went

21   forward that we would issue a Rule 68 offer of

22   judgment.  We have not at this point.

23             THE COURT:  And --

24             MR. PERRI:  What does that mean?

25             THE COURT:  An offer of judgment shifts the

```
1   costs of the litigation.  If you don't prevail and get
2   more than that amount at trial, then you're on the hook
3   for the costs of the other side.
4              MR. PERRI:  Okay.
5              THE COURT:  What about the risks involved,
6   should the case proceed to trial regarding Mr. Perri's
7   ability to testify or cope with cross-examination?
8              MR. FELDMAN:  I don't believe that -- I
9   believe that Mr. Perri would have a very difficult time
10  convincing the trier of facts, whether it's a judge or
11  a jury, that the events that happened to him are worth
12  more than $12,500.  And what would come out also would
13  be his past history of filing other lawsuits, his past
14  history of convictions, and also what would come out
15  would be his claims of a global conspiracy against him.
16             THE COURT:  And you believe that these are
17  serious issues in going forward?
18             MR. FELDMAN:  Yes, Judge.
19             MR. PERRI:  Your Honor?
20             THE COURT:  Yes.
21             MR. PERRI:  What I maintain and what was
22  submitted to the corporation counsel and to the Court
23  on September 9, I was arrested in 1982 for stabbing a
24  New York City Police Officer who was drunk who chased
25  me down the street with four other New York City Police
```

1   Officers.  And I allege that since that time, I've been

2   setup by police, including Steven Caracoppa (ph), who

3   is one of the Mafia cops who was my arresting officer.

4            My entire family is dead right now.  I

5   believe that the City is aware of these facts and my

6   whole family is dead.  And they set me up in numerous -

7   - they used multiple resources within the New York City

8   Police Department since my release.

9            THE COURT:  Mr. Perri, to be fair, okay,

10  from reading the papers.  Your father was an alcoholic.

11  You were removed from the home when you were a young

12  man.  Your brother died of AIDS, if I'm correct, from

13  what the papers you submitted --

14           MR. PERRI:  One brother was shot in the

15  head.

16           THE COURT:  One brother was shot in the

17  head.  But I want it to be clear that --

18           MR. PERRI:  My brother did die of AIDS, but

19  he was set up.

20           THE COURT:  -- you have had a most

21  unfortunate and sad family history.

22           MR. PERRI:  Okay.  That's true.  But I was

23  set up.  I'm maintaining I was set up for stabbing that

24  off-duty police officer.  That when I did my time and

25  got out from serving the assault charge, that the New

1    York City Police Department and the City of New York

2    used multiple resources to set me up and destroy my

3    life.

4              THE COURT:  And, Mr. Perri, how old were you

5    --

6              MR. PERRI:  And my arresting officer was --

7              THE COURT:  How old were you when --

8              MR. PERRI:  -- Steven Caracoppa, none other.

9              THE COURT:  I understand.

10             MR. PERRI:  And their murders took place

11   right after my incarceration in 1986.

12             THE COURT:  And how old were you at the time

13   that you were originally incarcerated?

14             MR. PERRI:  23 years old.

15             THE COURT:  And how old are you now, Mr.

16   Perri?

17             MR. PERRI:  I'm 48, but -- but there's no

18   statute of limitations on murder, if they set my

19   brother up to be murdered and --

20             THE COURT:  Mr. Perri, I understand.

21             MR. PERRI:  This is a continuing conspiracy.

22   I allege that since I got out in 1996, that I was being

23   set up.  I have photos of these police that were

24   following me around College Point.  They used these

25   civilians to set me up.  And I believe one of the

1    reasons why Johana Castro and Mary O'Flynn are off this

2    case now is because they were actually involved with

3    these police, Deputy Chief James P. O'Neil and John Doe

4    #1 and John Doe #2 were actually involved with these

5    police that continued to set me up after I filed this

6    case.

7              So these are the reasons why I need this

8    case to go forward because this is part of a continuing

9    conspiracy.

10             And also, your Honor, if it doesn't, if this

11   case is settled, I'm going to make a request of this

12   Court that the entire file be kept within the court and

13   that I be able to bring up -- now, I know that you say

14   that a lot of the things that I'm bringing as a global

15   conspiracy -- but that I be able to bring up and bring

16   a case against the New York City Police Department and

17   the City of New York for what they've done to me since

18   I filed this case in lieu of violation of my first

19   amendment rights, that I'm going to bring another case.

20   And my only problem with --

21             THE COURT:  Let me just --

22             MR. PERRI:  -- the federal government and

23   the court has been every time I've tried to hold the

24   police and the City of New York accountable, I've run

25   up against a roadblock by the City and the federal

1    government have come after me.

2              THE COURT:  Mr. Perri, let me just go back

3    on track for a moment.

4              I understand that there are many other

5    reasons and issues that you want the Court to take note

6    of, and that's why I've given you the opportunity to

7    place all of those statements on the record.

8              I'd like to hear from the City now what the

9    terms of the settlement that were proposed to Mr.

10   Feldman were, that he agreed to on Mr. Perri's behalf.

11             Is that correct, Mr. Feldman, that you

12   agreed to the settlement?

13             MR. FELDMAN:  Yes, Judge.

14             THE COURT:  And what was the City's

15   authority to settle this case?

16             MS. PUBLICKER:  $12,500, your Honor.

17             THE COURT:  And Mr. Perri would be paid that

18   within how long of a settlement being approved by the

19   Court?

20             MS. SMITH-WILLIAMS:  Ninety days,

21   your Honor.

22             THE COURT:  And as I said, Mr. Feldman,

23   under local Civil Rule 83.2, there are procedures that

24   are set forth in the CPLR under Section 1208 which

25   actually requires certain information in affidavits to

1    be filed by the guardian ad litem, which are very

2    basic:  your name; address; relationship to plaintiff,

3    which would be appointed by the Court; the name, age,

4    and residence of plaintiff; the circumstances giving

5    rise to the action; the nature and extent of the

6    damages sustained by plaintiff; and the terms and

7    proposed distribution of the settlement.

8              And that would have to be submitted in an

9    affidavit with the settlement for the Court to approve

10   it.  And you should look at the Section 1208 of the

11   CPLR for that affidavit to submit such an affidavit to

12   the Court.  That is the proceeding to settle or

13   compromise an action, and it has to conform and nearly

14   as may be to the New York State statutes and rules.

15   But the Court may dispense with any New York State

16   requirement and the affidavit or the sworn statement is

17   under 1208(a)(5).

18             I do want you to understand, Mr. Perri, that

19   in order to appeal there has to be a judgment entered

20   by the Court.  And that, although you may have

21   significant reservations regarding settlement, the

22   guardian ad litem was appointed, does have authority to

23   settle the case, and is doing it because he has weighed

24   the risks and benefits to you.

25             Mr. Feldman, do you believe that this

1    settlement is in plaintiff's best interests?

2                MR. FELDMAN:  I do, your Honor.

3                THE COURT:  And do you believe that his

4    claims would be both triable and viable, if he

5    proceeded on these claims?

6                MR. FELDMAN:  I don't believe that they are,

7    your Honor.

8                THE COURT:  And do you believe that this is

9    a fair result for Mr. Perri?

10               MR. FELDMAN:  I do, your Honor.

11               THE COURT:  And, Ms. Publicker, I would ask

12   that you -- I don't know who the person was that you

13   spoke to at the Crime Victim Compensation Board, but I

14   would ask that you go over that person to the next

15   person of higher authority with more experience on the

16   job to now review what has been discussed on the record

17   today, that Mr. Perri has been off probation for over

18   seven years, that his conviction was twenty-some-odd

19   years ago.

20               MR. PERRI:  It happened 25 -- the conviction

21   was --

22               THE COURT:  Because I don't know what the

23   retroactivity is of the amended statute in 2001.  I'm

24   not going to reach all these issues, but if we could

25   eliminate another contentious issue.  And I'm also

1    directing that you go back to your office to find a way

2    to waive any liens based on any social services

3    payments because that would eliminate another barrier

4    here, in light of Mr. Perri's indigency and his need to

5    find, in my mind, a permanent place where he can to

6    make himself safe.

7                    MR. PERRI:  Your Honor?

8                    THE COURT:  Yes.

9                    MR. PERRI:  Could I make a few -- first, you

10   know, I really didn't hear from Mr. Feldman -- he took

11   over the case and so far there really hasn't been any

12   work on the case.  I appreciate that he's looked

13   through the records and he has an opinion on the case.

14                   THE COURT:  And he's spoken to other people

15   who are more expert than he is.

16                   MR. PERRI:  Okay.  And under normal

17   circumstances, I agree that that would be a fair

18   settlement, but this isn't a normal case.

19                      Now, I want to work with the Court and

20   resolve this case and these issues.  You know, but then

21   I heard Mr. Feldman after not hearing from him for

22   about a month, and he told me the case was settled.

23   And I thought there was going to be some kind of status

24   report, status on the case put in.  So I asked Mr.

25   Feldman.  I said, did you put a status report.  He

1    said, yeah.  I said, could you send me a copy.

2              THE COURT:  It was just a letter to the

3    Court saying that it was settled.

4              MR. PERRI:  He said, well, you know it's

5    just one sentence.  And I said, well, what does it say

6    and he was skeptical to say.  And then I got to the

7    Court.  I looked on the -- you know, I was going to the

8    court anyway to file something else and I looked.  And

9    it said the case has been settled.  I was like, oh my

10   God.  And all of a sudden there's a marshal behind me.

11   I didn't even know that he settled the case for an

12   amount that I could have gotten over two years ago.

13             But then, your Honor, I want to make a -- it

14   appears to be that he has the power to do this beyond

15   my -- I'm going to state my objection for the record

16   because it's a matter of a continuing conspiracy, for

17   that reason, that by the New York City Police

18   Department and by the City of New York that's gone on

19   since I -- even more enhanced since I filed this

20   lawsuit on January 26, 2006.  So I want to make a

21   request that if you approve the settlement, that your

22   Honor, I want to make a personal request because I've

23   litigated this case for five years.  I've spent over

24   $30,000 now of my own money.  I've been homeless three

25   times.  I've spent rent money all on this case.  And I

```
1   want to make a request of the Court, a motion of the
2   Court, that you state for the record and the attorney
3   states for the record -- because I obviously have no
4   say in what he's going to write in the settlement or
5   what the City is going to say.
6            So I'm asking you, your Honor, to protect my
7   rights here and to have the City state that it's only
8   that one incident.  Even if it is a matter of a
9   continuing conspiracy, that one incident, that I could
10  bring a new case --
11           THE COURT:  There is not going to be any
12  release that you're signing, Mr. Perri.  This is about
13  that one incident in October --
14           MR. PERRI:  One incident.
15           THE COURT:  -- of 2003.
16           MR. PERRI:  And I can bring a new case.
17  You're telling me I can bring a new case for the first
18  amendment violations --
19           THE COURT:  Mr. Perri --
20           MR. PERRI:  -- that occurred after that.
21           THE COURT:  Mr. Perri, there is nothing in
22  this settlement that is barring you from any further
23  litigation.  That doesn't mean that I'm encouraging
24  you, Mr. Perri.  I wish that you'd find something else
25  to do with your time, sir.
```

1              MR. PERRI:  No problem.  But -- now those

2    records, those photos of those police --

3              THE COURT:  They're all part of the public

4    file, sir.  They're public records.  The court records

5    are public.

6              MR. PERRI:  And you're saying that they have

7    nothing to do -- and what my attorney and what this

8    Court and what the City's position is that they have

9    nothing to do with the October 11 incident.

10             So, having said that, that I can take that

11   body of evidence, which is every substantial, 200 and

12   something documents, there's probably 150 of mine, and

13   I can take that and bring my case against the City,

14   which I'm going to do.

15             THE COURT:  Mr. Perri, I'm not telling you

16   what you can do in the future.  I am saying as to this

17   claim about what occurred on October 11, 2003 at 109

18   Precinct in proposing this settlement agreement, Mr.

19   Feldman, your guardian ad litem, has thoroughly

20   considered the fairness and adequacy of this $12,500

21   settlement in light of the risks of continued

22   litigation on your behalf.

23             The statements that you have made to the

24   Court that you believe there is a continuing conspiracy

25   are not addressed by this settlement agreement.

```
 1              As far as having these other matters
 2   addressed regarding the liens that would normally be
 3   placed against the account -- because I think that that
 4   is something that needs to be looked into very quickly
 5   -- because I'm going to ask in the next ten days for
 6   the parties to get to the Court the affidavit, Mr.
 7   Feldman, under 1208 of the CPLR regarding the terms of
 8   the settlement, that the City has authority to offer
 9   this amount, and I'm asking you to find out about
10   whether or not there can be -- even if he submits an
11   affidavit of no liens, that there can be an agreement
12   that nobody will pursue the liens.
13              The difference between the $7,500, which the
14   City routinely does not try to collect on liens, and
15   the $12,500 is no so great in this case.  And I believe
16   it would be in everybody's interest to get this fair,
17   reasonable, and adequate settlement effectuated.
18              So, again, I understand and I will state for
19   the record again that you have significant reservations
20   regarding the settlement, Mr. Perri.  You have the
21   right to object to the settlement.  And the settlement
22   will only be a release against the defendants for that
23   October 11, 2003 event at the 109 Precinct and does not
24   cover events since time.
25              MR. PERRI:  Or before the time.
```

1              THE COURT:  Well, before that time, you are

2    out of the box on the statute of limitations, sir.  So

3    as far as what the --

4              MR. PERRI:  It's a continuing conspiracy.

5              THE COURT:  -- what the Second Circuit will

6    say about whether or not they're going to appoint a

7    guardian for you, if and when you file an appeal, that

8    I have nothing to say because I don't know what will

9    happen.

10             MR. PERRI:  It depends.

11             THE COURT:  I do know that once I receive

12   the settlement documents from Mr. Feldman on your

13   behalf and from the City, that I then have to put this

14   in a report and recommendation; that the minutes from

15   today's conference will be made part of the record, and

16   that I will recommend to Judge Amon that this

17   settlement be approved.  And you will have your chance

18   to object to Judge Amon.

19             MR. PERRI:  Okay.  Now, your Honor, can I

20   ask you -- I have an interlocutory appeal.  I filed a

21   motion for a temporary restraining order against the

22   police.

23             THE COURT:  I understand that, but that was

24   after the guardian ad litem was already appointed.  So

25   whether or not you had the authority to file papers on

```
1    your own behalf when there was a guardian appointed --

2              MR. PERRI:  I don't think so.

3              THE COURT:  Again, Mr. Perri, you will take

4    up your full set of remedies with --

5              MR. PERRI:  He got appointed in December.  I

6    filed it in November.

7              THE COURT:  You'll take up your full set of

8    remedies with the circuit court, okay.

9              MR. PERRI:  Well, you know, I'm not saying

10   I'm going to appeal because your Honor believe it or

11   not, I want to work with the Court and the government

12   and everybody who wants to get this done.  However, if

13   the Court allows me to file another case against the

14   City before them, I have no problem whatsoever settling

15   this case.

16             THE COURT:  Mr. Perri, Mr. Perri.  I cannot

17   comment on anything that you intend to do or what comes

18   after.  I am only dealing with the case from October

19   11, 2003.

20             MR. PERRI:  I'm just looking to protect

21   myself.

22             THE COURT:  I understand, sir.  But I find

23   that any --

24             MR. PERRI:  I'm having problems with their

25   clients and --
```

```
1              THE COURT:  And additional delay in
2    furnishing a remedy to Mr. Perri in this case would not
3    be in the interest of justice.  So I am directing the
4    parties to file electronically the settlement
5    agreement, the CPLR statement as required for in infant
6    compromise, by -- we are currently at the 29th.  Could
7    it be done by the 11th of April?  Mr. Feldman?
8              MR. FELDMAN:  Sorry, Judge.  Yes, that's
9    fine with me.
10             THE COURT:  And Ms. Publicker?
11             MS. PUBLICKER:  Yes, your Honor.
12             THE COURT:  And, Ms. Publicker, I can state
13   that the other case where there was this issue was
14   Hesterbey, and it was Mr. DePaul's case in your office,
15   so please check in with him.
16             Is there anything else today before we
17   adjourn?  Mr. Feldman?
18             MR. FELDMAN:  No, your Honor.
19             THE COURT:  Mr. Perri?
20             MR. PERRI:  I just want to request a copy of
21   the minutes of this proceeding.
22             THE COURT:  I'll get them made part of the
23   record and have them sent to you.
24             MR. PERRI:  And I want to say thank you.
25             THE COURT:  Thank you, Mr. Perri.
```

```
1                  MR. PERRI:  For speaking out for me and --

2                  THE COURT:  Mr. Perri, do you have an

3     address that is currently on the books?  You said that

4     you were homeless.  I want to make sure that -- or does

5     Mr. Feldman --

6                  MR. PERRI:  Yeah, well, I'm under another

7     -- I'm under --

8                  THE COURT:  -- know where he can send you a

9     copy of the minutes?

10                 MR. PERRI:  Oh, yeah.

11                 MR. FELDMAN:  He's not homeless now.  I

12    believe he has eviction proceedings.

13                 MR. PERRI:  I'm under a eviction proceeding

14    again.

15                 THE COURT:  Well, I'm sorry to hear that,

16    sir.  I'm hopeful that things will turn around if you

17    get a little money.

18                 MR. PERRI:  Well, it's a continuation of my

19    situation.

20                 THE COURT:  Again, Mr. Perri, I wish you

21    good luck.

22                 Anything further, Ms. Publicker?

23                 MR. PERRI:  Same to you, your Honor.

24                 MS. PUBLICKER:  No, your Honor.

25                 THE COURT:  Anything further from anybody?
```

1           MR. FELDMAN:  No, your Honor.

2           THE COURT:  Then we are adjourned.  Thank

3   you.

4           MR. PERRI: Thanks for the time, your Honor.

5                   * * * * * * * * *

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18        I certify that the foregoing is a correct

19   transcript from the electronic sound recording of the

20   proceedings in the above-entitled matter.

21

22

23

24

25   ELIZABETH BARRON                    April 4, 2011