FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ APR 22 2011 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------x

ANTHONY PERRI,

                Plaintiff,

        -against-

JOHN DOE, *Captain*; SERGEANT
BARRITEAU; SUSAN SAVIANO;
JOSEPH DITUCCI; and
THE CITY OF NEW YORK,

                Defendants.

-------------------------------------------------------x

**REPORT AND RECOMMENDATION**
**06 CV 403 (CBA)(LB)**

**BLOOM, United States Magistrate Judge:**

Plaintiff brings this *pro se* action alleging that defendant police officers and the City of New York violated his rights under federal and state law by using excessive force during his arrest and detention, exhibiting deliberate indifference to his medical needs, and intentionally inflicting emotional distress upon him. The Court appointed a guardian *ad litem* to represent plaintiff pursuant to Rule 17(c) of the Federal Rules of Civil Procedure and the guardian *ad litem* has reached a settlement with defendants regarding plaintiff's action. Plaintiff objects to the proposed settlement. For the reasons set forth below, it is respectfully recommended that the Court should approve the parties' settlement.

## BACKGROUND

This action arises out of plaintiff's arrest and detention at the 109th Precinct on October 11, 2003. Plaintiff was arrested after he chased some children in his neighborhood who were throwing eggs at another child; plaintiff caught one of the children and held the child by the wrist until the police arrived. (Docket entry 65, Third Am. Compl., ¶¶11-14.) Plaintiff alleges when the police arrived, he was arrested. (Id. at ¶12.) While in police custody at the 109th Precinct,

plaintiff experienced a panic attack and defendants purposefully dropped him face down on the ground to determine if he was "faking" the panic attack. (Id. at ¶16.) Plaintiff was brought to Flushing Hospital to treat his panic attack, returned to police custody upon his discharge from the hospital, and eventually released. (Id. at ¶¶19-27, 40.) Although not part of the pleadings, plaintiff alleges a wide-ranging conspiracy to harass and harm him. The details of the alleged conspiracy, as well as plaintiff's emergency requests for the Court to stop those involved, are well documented in plaintiff's submissions to the Court.[1]

The Court assumes familiarity with the procedural history of this case for the purpose of this Report. On March 11, 2010, the parties' cross motions for summary judgment were denied without prejudice to allow the Court to consider whether a guardian *ad litem* should be appointed for plaintiff under Rule 17(c) of the Federal Rules of Civil Procedure. (Docket entry 179.) The Court arranged for plaintiff to be evaluated by a psychiatrist and ordered plaintiff to appear for the evaluation. (Docket entry 195.) The Court held a hearing on December 16, 2010 to determine whether a guardian *ad litem* should be appointed for plaintiff pursuant to Rule 17(c).[2] (Docket entry 208.) Based on plaintiff's psychiatric evaluation by Dr. Merrill Rotter, plaintiff's voluminous submissions over the years, as well as plaintiff's conduct at the hearing and throughout these proceedings, the Court found that plaintiff lacks the capacity to pursue this lawsuit on his own behalf and appointed Ian Feldman, Esq., the Director of Legal Services for

---

[1] During the course of this litigation, plaintiff sought numerous preliminary injunctions to restrain the alleged conspirators from harassing and harming him. (Docket entries 104, 107, 151, 159, 178, and 198). After the denial of his most recent motion for a preliminary injunction, plaintiff appealed to the Second Circuit. (Docket entries 199, 201, 202 and 204.) On April 7, 2011, the Second Circuit issued a mandate dismissing plaintiff's appeal. (Docket entry 219.) Immediately thereafter, plaintiff requested a stay of these proceedings until the Supreme Court of the United States could review the Second Circuit's dismissal of his interlocutory appeal. (Docket entry 220.) The Court denied plaintiff's request to stay these proceedings and plaintiff again appealed that decision to the Second Circuit. (Docket entries 223 and 227.)

[2] The Court had previously appointed *pro bono* counsel and a guardian *ad litem* for plaintiff. (Docket entry 106). However, plaintiff fired his *pro bono* counsel and the Court relieved the previous guardian *ad litem*. (Docket entries 112 and 114.)

the Mental Health Project at the Urban Justice Center, as his guardian *ad litem* under Rule 17(c) of the Federal Rules of Civil Procedure.[3] (Docket entry 209.)

Following Mr. Feldman's appointment as plaintiff's guardian *ad litem*, the parties engaged in settlement negotiations. On January 28, 2011, Mr. Feldman informed the Court that plaintiff had rejected defendants' most recent settlement offer and that he would continue working to reach a settlement that plaintiff would be content with. (Docket entry 211.) On March 14, 2011, Mr. Feldman reported that the parties had reached a settlement. (Docket entry 213.) The Court held a compromise hearing on March 29, 2011 to address the proposed settlement. (Docket entry 218.) Following the hearing, the parties submitted the stipulation of settlement and Mr. Feldman submitted a declaration recommending approval of the proposed settlement. (Docket entries 221 and 228.)

## DISCUSSION

Rule 83.2(a)(1) of the Local Civil Rules for the Southern and Eastern Districts of New York requires the Court to review any proposed settlement in a case that involves claims by an incompetent plaintiff. Local Civil Rule 83.2(a)(1) ("An action by or on behalf of an infant or incompetent shall not be settled or compromised, or voluntarily discontinued, dismissed or terminated, without leave of the court embodied in an order, judgment or decree."). "In exercising its discretion [to approve the compromise of an incompetent plaintiff's claims], the district court's focus is to 'determine whether a proposed settlement is fair, reasonable, and adequate,' by comparing 'the terms of the compromise with the likely rewards of litigation.'" Neilson v. Colgate-Palmolive Co., 199 F.3d 642, 654 (2d Cir. 1999) (quoting Maywalt v. Parker & Parsley Petroleum Co., 67 F.3d 1072, 1079 (2d Cir. 1995)). The Second Circuit made clear in

---

[3] Mr. Feldman agreed to serve *pro bono* as plaintiff's guardian *ad litem* in this case. The Court is sincerely grateful to Mr. Feldman for his exemplary service.

Neilson that the Court may approve a settlement reached by a guardian *ad litem* appointed by the Court under Rule 17(c) of the Federal Rules of Civil Procedure even over plaintiff's objections. Id.

Local Civil Rule 83.2(a)(1) further provides that "[t]he proceeding upon an application to settle or compromise such an action [on behalf of an incompetent person] shall conform, as nearly as may be, to the New York State statutes and rules, but the court, for cause shown, may disperse with any New York State requirement." The New York rules for compromise proceedings are set forth in Section 1208 of the New York Civil Practice Law and Rules (CPLR). Specifically, "CPLR § 1208 requires that a proposed settlement of an incompetent's action be accompanied by an affidavit from the incompetent's representative providing eight pieces of information." Neilson, 199 F.3d at 655; N.Y. C.P.L.R. § 1208(a)(1) – (8).

Pursuant to Local Civil Rule 83.2(a)(1) and Section 1208 of the CPLR, Mr. Feldman provides a sworn declaration recommending the approval of the proposed settlement. (Docket entry 228, Decl. of Guardian Ad Litem ("Feldman Decl.").) Mr. Feldman summarizes the facts giving rise to the instant action in his declaration and states that the City of New York has agreed to pay plaintiff $12,500 in full settlement of his claims. (Id. at ¶¶4, 11-13.) Mr. Feldman bases his approval of the proposed settlement on the following: a review of the extensive record in this case, numerous conversations with plaintiff, an assessment of the facts supporting plaintiff's claims, a consultation with a psychiatrist, a consultation with an experienced civil rights attorney, an assessment of whether plaintiff would be able to find counsel to represent him in this case, plaintiff's background, plaintiff's submissions to the Second Circuit, other litigation brought by plaintiff in this Court, and an assessment of how plaintiff would fare presenting his case to a jury and under cross-examination. (Id. at ¶8.) Mr. Feldman reviewed the relevant medical records,

4

including the Ambulance Call Report and the Flushing Hospital emergency room records, and states that nothing in the medical records suggests that plaintiff "sustained any physical injuries by the police officers that would justify a different settlement amount." (Id. at ¶14.) Mr. Feldman further states that plaintiff conceded at his deposition that he was not physically injured by the October 11, 2003 arrest or the events surrounding the arrest, and that he did not seek any medical treatment for injuries sustained on October 11, 2003. (Id. at ¶15.) Mr. Feldman concludes that "[g]iven Mr. Perri's claims, medical records and deposition, a settlement of $12,500 is wholly reasonable: it compensates him for his arrest, his experience at the police precinct, being taken to the hospital, and being taken to court." (Id. at ¶17.) Mr. Feldman believes that plaintiff's "real dissatisfaction [with the proposed settlement] is not with the amount of the settlement but, instead, is grounded in his very strongly held beliefs that there exists a vast conspiracy to harm him and others and that it is his 'civic duty' . . . to expose this conspiracy and bring the conspirators to justice." (Id. at ¶20.) Finally, Mr. Feldman states that the proceeds from this settlement would be held in escrow for plaintiff at the Urban Justice Center until he is able to establish a trust for plaintiff. (Id. at ¶21.)

At the compromise hearing on March 29, 2011, Mr. Feldman stated on the record that after reviewing the record of this case and consulting with an experienced civil rights attorney, he believed that the proposed settlement was both a fair result and in plaintiff's best interest. (Docket entry 218, Transcript of Compromise Hearing held on March 29, 2011 ("Tr."), at pp. 13-16, 45.) Mr. Feldman opined that plaintiff would "have a very difficult time convincing the trier of facts, whether it's a judge or a jury, that the events that happened to him are worth more than $12,500." (Id. at p. 39.) Mr. Feldman further explained that he did not believe that any amount of money would satisfy plaintiff "since [plaintiff's] main focus is getting the people to stop

poisoning his food, to stop poisoning his cat, [and] to stop spying on him." (Id. at p. 12.) Mr. Feldman stated that plaintiff's "past history of filing other lawsuits, his past history of convictions, and . . . his claims of a global conspiracy against him" would present significant obstacles for plaintiff at trial. (Id. at p. 39.) Mr. Feldman also stated that he would seek the assistance of *pro bono* counsel to establish a spendthrift trust for plaintiff's settlement award, so that plaintiff's receipt of SSI benefits would not be disrupted. (Id. at p. 25.)

At the hearing on March 29, 2011, plaintiff raised his objections to the proposed settlement. Plaintiff expressed his discontent with the amount of the settlement, stating that he was offered the same amount two years ago by a former Assistant Corporation Counsel. (Id. at p. 8.) He also stated that he feared the settlement would cause the termination of his SSI benefits. (Id. at p. 9.) Finally, he objected to the settlement because of the "continuing conspiracy . . . by the New York City Police Department and by the City of New York that's gone on since . . . I filed this lawsuit on January 26, 2006." (Id. at p. 47.) Plaintiff expressed that his primary concern was that this settlement would preclude him from bringing future lawsuits to address the conspiracy. (Id. at p. 48.)

Upon consideration of the terms of the stipulation of settlement, Mr. Feldman's sworn declaration, and the parties' statements at the hearing, the Court finds the terms of the proposed settlement are fair, reasonable, and adequate. In light of the damages suffered by plaintiff as a result of the October 11, 2003 incident, the proposed settlement amount is reasonable. Plaintiff did not sustain any serious physical injuries from defendants' alleged acts and did not seek medical treatment for any injuries. The record also reflects that plaintiff has long suffered from severe mental illness and had a particularly traumatic upbringing. (Docket entry 205.) Accordingly, it would be difficult for plaintiff to prove that his emotional distress was caused by

defendants' alleged acts on October 11, 2003 and that he is entitled to damages as a result. See Neilson, 199 F.3d at 654 (finding that the early onset of plaintiff's mental disorder "would certainly limit any potential recovery for lost wages and might diminish other forms of recovery as well"). Moreover, given plaintiff's mental illness and his earnest belief of an ongoing global conspiracy against him, plaintiff would encounter significant difficulty establishing his claim for damages before a jury. See Neilson, 199 F.3d at 654 (recognizing that plaintiff's "well-established paranoia would have created substantial obstacles for her at trial, including the risk that she would be unable to testify, or to do so with the necessary lucidity, or to cope with cross-examination"). Finally, the terms of the proposed settlement has been structured to address a number of issues and several of plaintiff's concerns. Mr. Feldman intends to have a spendthrift trust established for plaintiff so that the settlement funds will not affect his receipt of SSI benefits. Defendants have also incorporated a letter from the New York City Human Resources Administration into the proposed settlement which states that the New York City Department of Social Services will not assert a lien against the proceeds of this settlement.[4] (Docket entry 221.) Balancing the terms of the proposed settlement with the likely rewards from further litigation, the Court finds the proposed settlement serves the ends of justice and is both adequate and fair.[5]

## CONCLUSION

Accordingly, it is respectfully recommended that the Court should approve the parties' settlement and close this case.

---

[4] However, the Department reserves the right to pursue separate recovery if the settlement proceeds are placed into a supplemental needs trust. (Docket entry 221.)

[5] Local Civil Rule 83.2(a)(2) directs the Court to determine reasonable attorney's fees and authorize their payment from the settlement proceeds to an incompetent's counsel. However, Mr. Feldman has agreed to "receive no money from the settlement funds, from Mr. Perri, or from any other source for acting as his [guardian *ad litem*] or in connection with this case." (Feldman Decl. ¶5.)

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/Signed by Judge Lois Bloom/

LOIS BLOOM
United States Magistrate Judge

Dated: April 22, 2011
       Brooklyn, New York